IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY ____ D.C.

05 SEP 14 PM 3: 37

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

|  |  |  |
|---|---|---|
| JUSTIN HUDSON, Surviving Child of JENNIFER BRADDOCK, Deceased, by his next friend (Guardian) Pamela Davis; and PAMELA DAVIS, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | No. 04-2662-DP JURY TRIAL DEMANDED |
| SUSAN HUDSON; CITY OF MEMPHIS, a Governmental Entity; MEMPHIS POLICE OFFICER BARRON, #0508, individually; MEMPHIS POLICE OFFICER JOHNSON, #4431, indiv.; MEMPHIS POLICE OFFICER MORRIS, #1866, indiv.; MEMPHIS POLICE OFFICER OWEN, #6420, indiv.; MEMPHIS POLICE OFFICER WIGGINS, #1055, indiv.; COUNTY OF SHELBY, a Governmental Entity; and JOHN DOES 1-5, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER DENYING DEFENDANTS OWEN AND MORRIS' MOTION TO DISMISS

This matter is before the Court on the motion of Officers Joe Owen ("Owen") and John Morris ("Morris") (collectively "Defendants") to dismiss the Plaintiffs' constitutional allegations against them in their individual capacities, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The complaint, brought *inter alia* pursuant to 42 U.S.C. § 1983, alleges violations of Plaintiffs' rights under the Fifth and Fourteenth Amendments to the United States Constitution, as well as claims for wrongful death, outrageous conduct, and civil conspiracy. The Court has

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on ____

jurisdiction pursuant to 28 U.S.C. § 1331. For the following reasons, the Court DENIES Defendants' motion to dismiss.

## I. FACTUAL BACKGROUND[1]

James Hudson ("Hudson") committed numerous acts of domestic violence against Jennifer Braddock ("Braddock"). In 1998, Braddock was issued a protective order by the Shelby County General Sessions Criminal Court against Hudson. In 2000, Braddock filed a second petition for a protective order, but it was dismissed because it was believed that Hudson had fled the state. Braddock later filed a third petition for a protective order, which was granted in January 2001. In May, 2001, Theresa Hudson, Hudson's mother, was issued a protective order against Hudson.

On or about August 5, 2001, Hudson entered Braddock's home uninvited, unplugged the telephone, threatened Braddock, kicked and beat on her locked bedroom door, and kicked a dent in the car belonging to Braddock's roommate, Jenice Jones ("Jones"). The police were called, but when they arrived, they did not take a report and did not attempt to locate Hudson. The officer advised Braddock to file an arrest warrant with the Citizen's Dispute office.

Hudson was later charged, convicted, and sentenced to four days, with credit given for time served. Following his release, Hudson vandalized Jones' car and called Braddock, threatening that if she filed a report, he would kill her and then kill himself.

On or about September 1, 2001, Braddock reported to police that Hudson had vandalized her home, but no action was taken, in spite of the protective order. On or about November 12, 2001, Braddock reported to Owen that Hudson had stolen her car, but no action was taken by the police. Owen told Braddock that the car was not stolen since she knew who took it.

---

[1]The factual allegations are taken from Plaintiffs' complaint and are presumed to be true for purposes of the instant motion only.

On or about May 11, 2002, Braddock complained to Morris at the Police Department that Hudson had called her at home and work, threatening to kill Braddock and her family. Morris responded that Hudson was supposed to be in court the next week. On or about June 26, 2003, Hudson assaulted Braddock by hitting her in the face.

On or about June 26, 2003, Braddock petitioned the General Sessions Court again for a protective order. The hearing was set for July 9, but the hearing was continued to July 23. However, on July 9, Hudson received an ex parte protective order against Braddock until the July 23 hearing date.

In or about July, 2003, Braddock's mother, Plaintiff Pamela Davis ("Davis") reported to the police that Hudson threatened to kill Braddock and that he revealed a handgun. Hudson allegedly stated, "you know I'm crazy and that I'll do it." However, the police took no action.

On or about July 23, 2003, Braddock's fourth petition for protective order was granted; Hudson's petition against Braddock was denied. On or about August 25, 2003, Hudson was screened for a domestic violence treatment program, where he was assessed as high risk.

On August 27, 2003, Hudson broke down Braddock's door and murdered Braddock, Jones, and a friend, William Norman ("Norman"). Justin Hudson ("Justin"), the six year old son of Braddock and Hudson, was present and witnessed the murders. Justin ran out of the house following the shootings and went to a neighbor, who called the police. Justin stated that after Jones was shot, she told Justin to "get out of the house like your mother told you to." After Justin left the house, Hudson killed himself.

When the police arrived at the home, the officers noted that Hudson and Braddock were "obviously dead," and that Jones and Norman "appeared to be dead." However, they immediately left

3

the residence, allegedly without verifying the status of any of the victims.  The police allegedly

considered the incident a "lovers' quarrel."

On September 2, 2004, Plaintiffs filed the complaint with this Court, alleging claims for civil

rights violations, wrongful death, outrageous conduct, and civil conspiracy.  On March 25, 2005,

Defendants filed the instant motion to dismiss, asserting that Plaintiffs have not stated a claim upon

which relief can be granted.  Defendants assert that they are entitled to qualified immunity and, thus,

Plaintiff's constitutional allegations against them in their individual capacities should be dismissed.

## II. LEGAL STANDARD

A party may bring a motion to dismiss for failure to state a claim under Rule 12(b)(6).  This

motion only tests whether the plaintiff has pleaded a cognizable claim.  Scheid v. Fanny Farmer Candy

Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988).  Essentially, it allows the court to dismiss meritless

cases which would otherwise waste judicial resources and result in unnecessary discovery.  See, e.g.,

Nietzke v. Williams, 490 U.S. 319, 326-27 (1989).

The Supreme Court has held that "a complaint should not be dismissed for failure to state a

claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Nietzke,

490 U.S. at 326-27;  Lewis v. ACB Bus. Serv., Inc., 135 F.3d 389, 405 (6th Cir. 1997).  Thus, the

standard to be applied when evaluating a motion to dismiss for failure to state a claim is very liberal

in favor of the party opposing the motion.  Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976).

Even if the plaintiff's chances of success are remote or unlikely, a motion to dismiss should be denied.

To determine whether a motion to dismiss should be granted, the court must first examine the

complaint.  The complaint must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed. R. Civ. P. 8(a). The complaint must provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley, 355 U.S. at 47; Westlake, 537 F.2d at 858. The plaintiff, however, has an obligation to allege the essential material facts of the case. Scheid, 859 F.2d at 436-37.

In reviewing the complaint, the court must accept as true all factual allegations in the complaint and construe them in the light most favorable to the plaintiff. Windsor v. The Tennessean, 719 F.2d 155, 158 (6th Cir. 1983). Indeed, the facts as alleged by the plaintiff cannot be disbelieved by the court. Nietzke, 490 U.S. at 327; Murphy v. Sofamor Danek Group, Inc., 123 F.3d 394, 400 (6th Cir. 1997). Where there are conflicting interpretations of the facts, they must be construed in the plaintiff's favor. Sinay v. Lamson & Sessions Co., 948 F.2d 1037, 1039-40 (6th Cir. 1991). However, legal conclusions or unwarranted factual inferences should not be accepted as true. Lewis, 135 F.3d at 405-06.

On a motion to dismiss on the basis of qualified immunity, in addition to those facts alleged in the complaint, the court may consider facts supplied by the plaintiff after the defendant raises the affirmative defense. In the Sixth Circuit, there is no heightened pleading requirement in civil rights cases in which the defendant raises the qualified immunity defense. See Goad v. Mitchell, 297 F.3d 497, 503 (6th Cir. 2002). Immunity is a defense to liability, not an element of the plaintiff's *prima facie* case, so the plaintiff need not overcome the defense in the complaint. See Gomez v. Toledo, 446 U.S. 635, 640 (1980).

## III. ANALYSIS

Defendants' motion seeks dismissal of Plaintiffs' claims based on qualified immunity. Defendants assert that they are shielded from liability because they did not violate any constitutional rights of Plaintiffs. In Harlow v. Fitzgerald, 457 U.S. 800 (1982), the United States Supreme Court

5

held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Id. at 818. Furthermore, Defendants contend that the state statute governing restraining orders does not create a property interest which is entitled to due process protection. In support of this assertion, Defendants cite Town of Castle Rock v. Gonzalez, 125 S.Ct. 2796 (2005). In Gonzales, the United States Supreme Court held that "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." Gonzalez, 125 S.Ct. at 2803. They further held that under Colorado law, enforcement of a restraining order is not mandatory and thus, is not a constitutionally-protected property interest for purposes of the Due Process clause. Id. at 2805, 2810.

Plaintiffs argue that the function of enforcing a restraining order is operational, not discretionary, for police officers in Tennessee. Thus, Defendants are not entitled to the defense of qualified immunity.

In Gonzales, the Court found that the Colorado statute governing restraining orders left room for the discretion of the police officer. Gonzales, 125 S.Ct. at 2805. Specifically, the Colorado statute states that "[a] peace officer shall arrest, or, if an arrest would be impractical under the circumstances, seek a warrant for the arrest of a restrained person" when the officer has probable cause that the restraining order has been violated. Id., quoting Colo. Rev. Stat. § 18-6-803.5(3). Moreover, the Colorado statute declares that "[a] peace officer shall use every reasonable means to enforce a protection order." Colo. Rev. Stat. § 18-6-803.5(3)(a). The Court noted that stronger language would be required to demonstrate a "true mandate of police action." Gonzales, 125 S.Ct. at 2805.

The Tennessee legislature provided stronger language in drafting the law governing restraining orders in Tennessee. Tennessee Code Annotated § 36-3-611 requires law enforcement officers to

6

make an arrest without a warrant whenever the officer has reasonable cause to believe that an order of protection has been violated. Tenn. Code Ann. § 36-3-611(a). In <u>Matthews v. Pickett County, Tenn.</u>, 996 S.W.2d 162 (Tenn. 1999), the Sixth Circuit Court of Appeals certified a question to the Tennessee Supreme Court to resolve the state law issue of whether or not the existence of an order of protection gives rise to a special duty to protect. 996 S.W.2d at 163. The Tennessee Supreme Court held that immunity is removed when an order of protection has been issued. <u>Id.</u> at 164. Because Tennessee Code Annotated § 36-3-611 mandates that a police officer arrest someone when there is reasonable cause to believe that he has violated a protective order, the arrest is operational, not discretionary, and, therefore, immunity is removed. <u>Id.</u>

In the instant case, the officers had a statutory mandate to arrest Hudson each and every time that he violated the protective order. Pursuant to the decision in <u>Matthews</u>, and in light of the statutory language, when a police officer has probable cause to believe that a restraining order has been violated, an arrest is mandatory. Thus, Defendants are not entitled to qualified immunity.

Accordingly, Defendants' motion for qualified immunity is denied.

## IV. CONCLUSION

For the aforementioned reasons, the Court **DENIES** Defendants' motion to dismiss Plaintiffs' constitutional claims against them.

**IT IS SO ORDERED** this ⟨14th⟩ day of September, 2005.


**BERNICE BOUIE DONALD**
**UNITED STATES DISTRICT JUDGE**

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 63 in case 2:04-CV-02662 was distributed by fax, mail, or direct printing on September 15, 2005 to the parties listed.

---

William T. Winchester
THE LAW OFFICES OF WILLIAM T. WINCHESTER
2600 Poplar Ave.
Ste. 507
Memphis, TN 38112

Russell E. Reviere
RAINEY KIZER REVIERE & BELL
209 E. Main Street
Jackson, TN 38302--114

Danny A. Presley
COUNTY ATTORNEY'S OFFICE
160 N. Main Street
Ste. 660
Memphis, TN 38103

Mary Elizabeth McKinney
GODWIN MORRIS LAURENZI & BLOOMFIELD, P.C.
50 N. Front St.
Ste. 800
Memphis, TN 38103

Henry L. Klein
APPERSON CRUMP & MAXWELL, PLC
6000 Poplar Ave.
Ste. 400
Memphis, TN 38119--397

Deborah A. Godwin
GODWIN MORRIS LAURENZI & BLOOMFIELD, P.C.
50 N. Front St.
Ste. 800
Memphis, TN 38103

Debra L. Fessenden
SHELBY COUNTY ATTORNEY'S OFFICE
160 N. Main Street
Ste. 660
Memphis, TN 38103

Honorable Bernice Donald
US DISTRICT COURT