IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY ___ D.C.

05 SEP 14  PM 3:37

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | |
|---|---|
| JUSTIN HUDSON, Surviving Child of JENNIFER BRADDOCK, Deceased, by his next friend (Guardian) Pamela Davis; and PAMELA DAVIS, )<br><br>Plaintiffs, )<br><br>v. )<br><br>SUSAN HUDSON; CITY OF MEMPHIS, a Governmental Entity; MEMPHIS POLICE OFFICER BARRON, #0508, individually; MEMPHIS POLICE OFFICER JOHNSON, #4431, indiv.; MEMPHIS POLICE OFFICER MORRIS, #1866, indiv.; MEMPHIS POLICE OFFICER OWEN, #6420, indiv.; MEMPHIS POLICE OFFICER WIGGINS, #1055, indiv.; COUNTY OF SHELBY, a Governmental Entity; and JOHN DOES 1-5, )<br><br>Defendants. ) | No. 04-2662-DP<br>JURY TRIAL DEMANDED |

---

## ORDER DENYING DEFENDANT CITY OF MEMPHIS' RENEWED MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO RECONSIDER PREVIOUS ORDER DENYING CITY OF MEMPHIS' MOTION TO DISMISS

---

This matter is before the Court on the renewed motion of Defendant City of Memphis ("Defendant") to dismiss the complaint of Plaintiffs, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, or in the alternative, to reconsider the Court's December 28, 2004 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss. The complaint, brought *inter alia* pursuant to 42 U.S.C. § 1983, alleges violations of Plaintiffs' rights under the Fifth and Fourteenth Amendments to the United States Constitution, as well as claims for wrongful death, outrageous

This document entered on the docket sheet in compliance with Rule 58 and/or 79(a) FRCP on _____

conduct, and civil conspiracy. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the following reasons, the Court DENIES Defendant's motion to dismiss.

## I. FACTUAL BACKGROUND[1]

James Hudson ("Hudson") committed numerous acts of domestic violence against Jennifer Braddock ("Braddock"). In 1998, Braddock was issued a protective order by the Shelby County General Sessions Criminal Court against Hudson. In 2000, Braddock filed a second petition for a protective order, but it was dismissed because it was believed that Hudson had fled the state. Braddock later filed a third petition for a protective order, which was granted in January 2001. In May, 2001, Theresa Hudson, Hudson's mother, was issued a protective order against Hudson.

On or about August 5, 2001, Hudson entered Braddock's home uninvited, unplugged the telephone, threatened Braddock, kicked and beat on her locked bedroom door, and kicked a dent in the car belonging to Braddock's roommate, Jenice Jones ("Jones"). The police were called, but when they arrived, they did not take a report and did not attempt to locate Hudson. The officer advised Braddock to file an arrest warrant with the Citizen's Dispute office.

Hudson was later charged, convicted, and sentenced to four days, with credit given for time served. Following his release, Hudson vandalized Jones' car and called Braddock, threatening that if she filed a report, he would kill her and then kill himself.

On or about September 1, 2001, Braddock reported to police that Hudson had vandalized her home, but no action was taken, in spite of the protective order. On or about November 12, 2001, Braddock reported to Owen that Hudson had stolen her car, but no action was taken by the police. Owen told Braddock that the car was not stolen since she knew who took it.

---

[1]The factual allegations are taken from Plaintiffs' complaint and are presumed to be true for the purposes of the instant motion only.

2

On or about May 11, 2002, Braddock complained to Morris at the Police Department that Hudson had called her at home and work, threatening to kill Braddock and her family. Morris responded that Hudson was supposed to be in court the next week. On or about June 26, 2003, Hudson assaulted Braddock by hitting her in the face.

On or about June 26, 2003, Braddock petitioned the General Sessions Court again for a protective order. The hearing was set for July 9, but the hearing was continued to July 23. However, on July 9, Hudson received an ex parte protective order against Braddock until the July 23 hearing date.

In or about July, 2003, Braddock's mother, Plaintiff Pamela Davis ("Davis") reported to the police that Hudson threatened to kill Braddock and that he revealed a handgun. Hudson allegedly stated, "you know I'm crazy and that I'll do it." However, the police took no action.

On or about July 23, 2003, Braddock's fourth petition for protective order was granted; Hudson's petition against Braddock was denied. On or about August 25, 2003, Hudson was screened for a domestic violence treatment program, where he was assessed as high risk.

On August 27, 2003, Hudson broke down Braddock's door and murdered Braddock, Jones, and a friend, William Norman ("Norman"). Justin Hudson ("Justin"), the six year old son of Braddock and Hudson, was present and witnessed the murders. Justin ran out of the house following the shootings and went to a neighbor, who called the police. Justin stated that after Jones was shot, she told Justin to "get out of the house like your mother told you to." After Justin left the house, Hudson killed himself.

When the police arrived at the home, the officers noted that Hudson and Braddock were "obviously dead," and that Jones and Norman "appeared to be dead." However, they immediately

left the residence, allegedly without verifying the status of any of the victims. The police allegedly considered the incident a "lovers' quarrel."

On September 2, 2004, Plaintiffs filed the complaint with this Court, alleging claims for civil rights violations, wrongful death, outrageous conduct, and civil conspiracy. On July 6, 2005, Defendant filed the instant motion to dismiss, asserting that Plaintiffs have not stated a claim upon which relief can be granted.

## II. LEGAL STANDARD

### A. Motion to Dismiss

A party may bring a motion to dismiss for failure to state a claim under Rule 12(b)(6). This motion only tests whether the plaintiff has pleaded a cognizable claim. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). Essentially, it allows the court to dismiss meritless cases which would otherwise waste judicial resources and result in unnecessary discovery. See, e.g., Nietzke v. Williams, 490 U.S. 319, 326-27 (1989).

The Supreme Court has held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Nietzke, 490 U.S. at 326-27; Lewis v. ACB Bus. Serv., Inc., 135 F.3d 389, 405 (6th Cir. 1997). Thus, the standard to be applied when evaluating a motion to dismiss for failure to state a claim is very liberal in favor of the party opposing the motion. Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976). Even if the plaintiff's chances of success are remote or unlikely, a motion to dismiss should be denied.

To determine whether a motion to dismiss should be granted, the court must first examine the complaint. The complaint must contain "a short and plain statement of the claim showing that

4

the pleader is entitled to relief." Fed. R. Civ. P. 8(a).  The complaint must provide the defendant

with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley, 355

U.S. at 47;  Westlake, 537 F.2d at 858.  The plaintiff, however, has an obligation to allege the

essential material facts of the case.  Scheid, 859 F.2d at 436-37.

In reviewing the complaint, the court must accept as true all factual allegations in the

complaint and construe them in the light most favorable to the plaintiff. Windsor v. The Tennessean,

719 F.2d 155, 158 (6th Cir. 1983).  Indeed, the facts as alleged by the plaintiff cannot be disbelieved

by the court. Nietzke, 490 U.S. at 327;  Murphy v. Sofamor Danek Group, Inc., 123 F.3d 394, 400

(6th Cir. 1997).  Where there are conflicting interpretations of the facts, they must be construed in

the plaintiff's favor.  Sinay v. Lamson & Sessions Co., 948 F.2d 1037, 1039-40 (6th Cir. 1991).

However, legal conclusions or unwarranted factual inferences should not be accepted as true.

Lewis,135 F.3d at 405-06.

B. Motion for Reconsideration

A motion to alter or amend judgment pursuant to Fed. R. Civ. P. 59(e) may be made for one

of three reasons:

1) An intervening change of controlling law;

2) Evidence not previously available has become available; or

3) It is necessary to correct a clear error of law or prevent manifest injustice.

Fed. R. Civ. P. 59(e);  Helton v. ACS Group and J&S Cafeterias of Pigeon Forge, Inc., 964 F.

Supp 1175 (E.D. Tenn. 1997).  Rule 59 is not intended to be used  to "relitigate issues

previously considered" or to "submit evidence which in the exercise of reasonable diligence,

could have been submitted before." Id. at 1182.  Thus, there are limited circumstances in which

a court may grant a motion to alter or amend a judgment.

## III. ANALYSIS

Defendant cites the recent United States Supreme Court ruling in Town of Castle Rock v. Gonzalez, 125 S.Ct. 2796 (2005) in seeking dismissal of Plaintiffs' claims. Citing Gonzalez, Defendant asserts that Plaintiffs do not have a property interest in police enforcement of a restraining order for purposes of the due process clause of the United States Constitution. Defendants contend that the Gonzalez decision is dispositive as to Plaintiffs' claim pursuant to 42 U.S.C. § 1983. Plaintiffs contend, however, that Gonzalez is simply an interpretation of Colorado law and does not apply to this case.

To determine whether Plaintiffs are entitled to enforcement for purposes of the due process clause, the Court must establish whether the enforcement is a discretionary or operational function of the police. "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion." Gonzalez, 125 S.Ct. at 2803. In Gonzales, the Court held that, under Colorado law, enforcement of a restraining order is not mandatory. Id. at 2805. The Court there found that the Colorado statute governing restraining orders left room for the discretion of the police officer. Id. at 2805. Specifically, the Colorado statute states that "[a] peace officer shall arrest, or, if an arrest would be impractical under the circumstances, seek a warrant for the arrest of a restrained person" when the officer has probable cause that the restraining order has been violated. Id., quoting Colo. Rev. Stat. § 18-6-803.5(3). Moreover, the Colorado statute declares that "[a] peace officer shall use every reasonable means to enforce a protection order." Colo. Rev. Stat. § 18-6-803.5(3)(a). Because enforcing a restraining order was held to be a discretionary function, the defendant was shielded from liability. Gonzales, 125 S.Ct. at 2810. The Court noted that stronger language would be required to demonstrate a "true mandate of police action." Id. at 2805.

6

In this case, Plaintiffs argue that the Tennessee statute governing restraining orders provides stronger language than that utilized in the Colorado statute. Tennessee Code Annotated § 36-3-611 requires law enforcement officers to make an arrest without a warrant whenever the officer has reasonable cause to believe that an order of protection has been violated. Tenn. Code Ann. § 36-3-611(a). In Matthews v. Pickett County, Tenn., 996 S.W.2d 162 (Tenn. 1999), the Sixth Circuit Court of Appeals certified a question to the Tennessee Supreme Court to resolve the state law issue of whether or not the existence of an order of protection gives rise to a special duty to protect. 996 S.W.2d at 163. The Tennessee Supreme Court held that immunity is removed when an order of protection has been issued. Id. at 164. Because Tennessee Code Annotated § 36-3-611 mandates that a police officer arrest someone when there is reasonable cause to believe that he has violated a protective order, the arrest is operational, not discretionary, and, therefore, immunity is removed. Id.

In the instant case, the officers had a statutory mandate to arrest Hudson each and every time that he violated the protective order. Pursuant to the decision in Matthews, and in light of the statutory language, when a police officer has probable cause to believe that a restraining order has been violated, an arrest is mandatory. Thus, the function of enforcing a restraining order is operational, not discretionary, for police officers in Tennessee, and the benefit is a protected entitlement. Therefore, Defendant is not shielded from liability.

7

## IV. CONCLUSION

For the aforementioned reasons, the Court **DENIES** Defendant City of Memphis' motion to dismiss or in the alternative, to reconsider the Court's December 28, 2004 Order Granting in Part and Denying in Part Defendant's Motion to Dismiss.

**IT IS SO ORDERED** this _14th_ day of September, 2005.

BERNICE BOUIE DONALD
UNITED STATES DISTRICT JUDGE

8

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 64 in case 2:04-CV-02662 was distributed by fax, mail, or direct printing on September 15, 2005 to the parties listed.

---

William T. Winchester
THE LAW OFFICES OF WILLIAM T. WINCHESTER
2600 Poplar Ave.
Ste. 507
Memphis, TN 38112

Russell E. Reviere
RAINEY KIZER REVIERE & BELL
209 E. Main Street
Jackson, TN 38302--114

Danny A. Presley
COUNTY ATTORNEY'S OFFICE
160 N. Main Street
Ste. 660
Memphis, TN 38103

Mary Elizabeth McKinney
GODWIN MORRIS LAURENZI & BLOOMFIELD, P.C.
50 N. Front St.
Ste. 800
Memphis, TN 38103

Henry L. Klein
APPERSON CRUMP & MAXWELL, PLC
6000 Poplar Ave.
Ste. 400
Memphis, TN 38119--397

Deborah A. Godwin
GODWIN MORRIS LAURENZI & BLOOMFIELD, P.C.
50 N. Front St.
Ste. 800
Memphis, TN 38103

Debra L. Fessenden
SHELBY COUNTY ATTORNEY'S OFFICE
160 N. Main Street
Ste. 660
Memphis, TN 38103

Honorable Bernice Donald
US DISTRICT COURT